UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IVF CRYO LLC,                               )
                                            )
              Plaintiff,                    )
                                            )
       v.                                   )   No. 1:24-cv-00016-JPH-MKK
                                            )
H&W HOLDCO LLC,                             )
BRIAN HOFF,                                 )
                                            )
              Defendants.                   )
                                            )
                                            )
BRIAN HOFF,                                 )
H&W HOLDCO LLC,                             )
                                            )
              Counter                       )
              Claimants,                    )
                                            )
       v.                                   )
                                            )
IVF CRYO LLC,                               )
                                            )
              Counter                       )
              Defendant.                    )

**ORDER DENYING MOTION TO REMAND**

Plaintiff IVF Cryo brought this case in Indiana state court seeking a

declaratory judgment that it was not required to purchase back Defendant

H&W Holdco LLC's shares. Dkt. 1-2 at 5. Defendants H&W and Brian Hoff

removed this action to this court, dkt. 1 at 4, and IVF Cryo LLC filed a motion

to remand, arguing that the $75,000 amount in controversy requirement was

not met. Dkt. [21]. Because Defendants have shown that the amount in

1

controversy exceeded the jurisdictional amount, the motion to remand is

**DENIED**.

## I.
## Facts and Background

In December 2021, H&W and its principal and sole member, Brian Hoff,

entered into an operating agreement with Fish Business Holdings, Vykk Drago

Enterprises, and Don and Edward Fish to manage IVF Cryo.  Dkt. 1-2 at 2–3.

At that time, H&W contributed $200,000 for a stake in the company.  Dkt. 1.

Don Fish, Edward Fish, and Mr. Hoff served as the IVF Cryo board of directors

and worked for the company.  Dkt. 1-2 at 3.

In September 2023, the other members of IVF Cryo expelled H&W under

the operating agreement, and Don and Edward Fish expelled Brian Hoff from

the Board of Directors.  Dkt. 1 at 2.  The next month, H&W demanded payment

of the fair market value of its shares in IVF Cryo.  Dkt. 1-2 at 3.

IVF Cryo brought this case against H&W and Mr. Hoff in the Hamilton

Superior Court in December 2023, seeking a declaratory judgment that H&W

was not entitled to have its shares purchased back.  *Id.* at 5.  Defendants

removed the case to this court in January 2024, dkt. 1, and Plaintiff filed a

motion to remand, dkt. 21.

## II.
## Applicable Law

Because federal courts are of limited jurisdiction, "district courts may not

exercise jurisdiction absent a statutory basis."  *Home Depot U. S. A., Inc. v.*

*Jackson*, 139 S. Ct. 1743, 1746 (2019).  For the Court to have diversity

jurisdiction under 28 U.S.C. § 1332, the litigation must be between citizens of different states and the amount in controversy must exceed "$75,000, exclusive of interest and costs."

The proponent of federal jurisdiction has the burden of proving contested factual allegations by a preponderance of the evidence. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Once the material jurisdictional facts have been established, then "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *Id.* If at any time the court lacks subject-matter jurisdiction, "the case shall be remanded." 28 U.S.C. § 1447(c).

## III.
## Analysis

IVF Cryo argues that this case must be remanded because H&W's stake in IVF Cryo was worth less than the $75,000 jurisdictional amount. Dkt. 21. More specifically, IVF Cryo contends that it is worth less than it was in 2021 when H&W invested in IVF Cryo, and that H&W's shares are "non-marketable" and therefore "worthless." Dkt. 21 at 4. Defendants respond that in the absence of contrary evidence, H&W's stake is worth at least as much as it paid for it—$200,000. Moreover, since that investment, IVF Cryo has grown substantially, and its revenue has dramatically increased. Therefore, H&W's investment in IVF Cryo is easily worth more the $75,000 threshold. Dkt. 23 at 5.

"The amount in controversy is the amount required to satisfy the plaintiff's demands in full . . . on the day the suit was removed." *Oshana v.*

*Coca-Cola*, 472 F.3d 506, 510–11 (7th Cir. 2006).  So, in suits seeking

equitable remedies such as a declaratory judgment, the amount in controversy

is determined by the "value of the object of the litigation."  *America's Moneyline,*

*Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004).  A district court may

consider "post-filing events, including production of evidence during discovery,

to the extent they clarify what the plaintiff was actually seeking at the

beginning of the case."  *Sykes v. Cook Inc.*, 72 F.4th 195, 209–10 (7th Cir.

2023).

     Once the material jurisdictional facts have been established, "the case

stays in federal court unless it is legally certain that the controversy is worth

less than the jurisdictional minimum."  *Meridian Sec. Ins. Co.*, 441 F.3d at 542.

The mere potential that the value is less than the jurisdictional amount is

therefore not enough to require remand.  *See Spivey v. Vertrue, Inc.*, 528 F.3d

982, 986 (7th Cir. 2008).

     Here, the amount in controversy at the time of removal is the fair market

value of H&W's 15% equity stake in IVF Cryo when H&W was expelled from

ownership.  *See* dkt. 1 at 2 (arguing that Indiana law requires IVF Cryo to pay

"the fair value of the member's interest . . . as of the date of dissociation").  In

2021, H&W invested $200,000 for that 15% equity stake[1], *id.*, and IVF Cryo

does not dispute that this investment reflected a fair value, *see* dkt. 21 at 4.

---

[1] Defendants allege that the $200,000 was for a 12.5% stake, which would further
increase the amount in controversy, but the Court does not address this disagreement
because the jurisdictional amount is met even if the $200,000 was for a 15% stake.

Therefore, when the shares at issue were purchased at the end of 2021, they were worth more than the $75,000 jurisdictional amount.

Since then, IVF Cryo's Profit and Loss statements—which were prepared for business purposes rather than for litigation and which IVF Cryo does not question—suggest that its value based on revenue has only increased. In the year of H&W's initial investment, IVF Cryo's total income was $862,870.32. Dkt. 22-6. In 2022, IVF Cryo's total income grew to $1,551,354.65. Dkt. 22-7. And from January to July 2023, IVF Cryo had already surpassed 2022's revenue, with total income of $1,579,463.55. Dkt. 22-8. Defendants' exhibits—which show the initial investment value of $200,000, the company's increase in income, and the company's growth plan—show by a preponderance of the evidence that H&W's 15% ownership stake was worth more than $75,000 at H&W's dissociation. *See Meridian Sec. Ins. Co.*, 441 F.3d at 542. Defendants have therefore shown "a reasonable probability that the value of the stock in a private transaction would exceed the jurisdictional amount." *Gould*, 1 F.3d at 547. That is enough for this case to "stay[ ] in federal court" unless Plaintiffs can show that "it is 'legally certain'" that the 15% ownership stake is worth less than $75,000. *Meridian Sec. Ins. Co.*, 441 F.3d at 542.

In an attempt to do so, Plaintiffs rely on an affidavit from one of its directors, Don Fish. Dkt. 21-1. Mr. Fish's affidavit states that IVF Cryo had a net loss of about $176,000 in 2022, and that the 15% stake at issue should be valued at 4.4 times earnings before interest, taxes, depreciation, and amortization ("EBITDA"), which would be less than the jurisdictional amount.

5

*Id.* at 2.  Defendants argue that Mr. Fish's information is unreliable and insufficient to defeat their showing that the jurisdictional amount is satisfied. Dkt. 23 at 7–9.

Mr. Fish states that the 2023 EBITDA for IVF Cryo would be "at best" $10,000, so the value of the 15% stake would be approximately $44,000—based on his unexplained assumption that the value is EBITDA multiplied by 4.4.  Dkt. 21-1 at 2.  This value appears to contradict IVF Cryo's January to July 2023 P&L statement, which sets IVF Cryo's EBITDA through July at around $275,000.  Dkt 22-8.  More fundamentally, Mr. Fish does not explain why the company's value should be measured by EBITDA, when IVF Cryo's Growth Plan instead uses revenue to estimate the company's value.  Dkt. 22-3. Nor do Plaintiffs explain why their calculations, which were done for litigation purposes, should be given conclusive weight over Defendants' calculations, which are drawn from business records created for investors and IVF Cryo's financial management.  Dkt. 22-3 through dkt. 22-8.

In short, Plaintiffs' evidence at best shows uncertainty about the precise value of the 15% ownership stake at the time of H&W's dissociation.  But when it comes to amount in controversy, "[u]ncertainty differs from impossibility." *Spivey*, 528 F.3d at 986.  "Once the facts have been established, uncertainty about . . . whether damages . . . will exceed the threshold, does not justify" remand.  *Meridian Sec. Ins. Co.*, 441 F.3d at 543.

Finally, Plaintiff asserts that because the shares are "non-marketable" they are essentially "worthless."  Dkt. 21 at 4.  However, all that needs to be

6

established is "a reasonable probability that the value of the stock in a private transaction would exceed the jurisdictional amount" for the amount in controversy requirement to be satisfied.  *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993).  Since the value in that hypothetical private sale is enough, the non-marketability does not change the value of the company or prevent the amount in controversy requirement from being satisfied.[2]  *See id.*

Therefore, the Court concludes that Plaintiffs' submissions do not allow the Court to be "legally certain that the controversy is worth less than [$75,000]."  *Meridian Sec. Ins. Co.*, 441 F.3d at 543.

### IV.
### Conclusion

Plaintiff's motion to remand is **DENIED**.  Dkt. [21].

**SO ORDERED.**

Date: 7/29/2024

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[2] The Court therefore does not address Defendants' alternate argument that IVF Cryo's settlement offer also supports the jurisdictional amount.

7